409 So.2d 335 (1981)
Jerry A. STEWART
v.
SAM WALLACE INDUSTRIAL COMPANY and/or Swico, Inc. and/or Sam P. Wallace, Inc., Highlands Insurance Company and Shell Oil Company.
No. 14428.
Court of Appeal of Louisiana, First Circuit.
December 22, 1981.
Rehearing Denied February 18, 1982.
Writ Denied April 27, 1982.
*336 John W. Degravelles, Baton Rouge, for plaintiff-appellant Jerry A. Stewart.
A. S. Easterly, III, Baton Rouge, for defendants Sam P. Wallace Indus. Co., Inc., Highlands Ins. Co., and Shell Oil Co.
Before ELLIS, LOTTINGER and PONDER, JJ.
LOTTINGER, Judge.
This is an action ex delicto in which the plaintiff, Jerry A. Stewart, sought damages for personal injuries allegedly sustained when he stepped into a fence-post hole located on the property owned by defendant Shell Oil Company (hereinafter "Shell"). Also made defendants were Sam Wallace Industrial Company (hereinafter "SWICO") and Highlands Insurance Company. The defendants answered with a general denial, and specifically pleaded the affirmative defenses of assumption of risk and contributory negligence. SWICO further asserted that plaintiff's exclusive remedy against it was in workmen's compensation, under La. R.S. 23:1032 and 1061.
The plaintiff proceeded under two theories of recovery, negligence and strict liability under Louisiana Civil Code Article 2317. After trial on the merits, the case was taken under advisement by the trial court. Subsequently, the trial court rendered judgment for defendants. Plaintiff timely perfected an appeal to this court.
The incident which gave rise to the instant litigation occurred on May 28, 1976. At that time, plaintiff was employed by Boh Brothers Construction Company as the foreman of a pile driving crew. The defendant SWICO was the general contractor on a project to build a biotreatment facility for defendant Shell at Geismar, Louisiana. Boh Brothers Construction Company, plaintiff's employer, was a subcontractor on the project.
The area of the Shell plant at Geismar where the plaintiff and his crew were to drive pilings was undeveloped and overgrown with weeds and bushes. On the day before the accident, plaintiff was informed that a fence was to be removed from the area by SWICO and that the area was going to be "dressed up" i.e., cleared of undergrowth and levelled. The next day, when plaintiff arrived at the work area on the morning of the accident, the fence had been removed; however, the area from which the fence was removed had not been "dressed up." The plaintiff testified that the exact prior location of the fence was not ascertainable due to the high weeds, grass, and bushes. Several fence posts lay on the ground in no particular sequence or order.
Shortly after work commenced, the plaintiff and the crew had need for a container *337 of air. The plaintiff began to walk back toward the main plant area to obtain same. In so doing, the plaintiff traversed the rough terrain left behind after the removal of the fence. Soon after embarking on his trek back to the main plant area, plaintiff stepped into a hole that was left by the removal of a fence post. The hole was approximately eighteen inches in diameter and three feet deep. As a result of stepping into the hole, plaintiff tripped and sustained serious injuries to his back.
The trial court held that the plaintiff assumed the risk of injury and was thus barred from recovery either under negligence theory or under Louisiana Civil Code Article 2317. In so doing, the trial court pretermitted discussion of the elements of strict liability under Civil Code Article 2317, SWICO's statutory employer defense, and all other issues.
On appeal, the plaintiff contends that the trial court's determination that the plaintiff had assumed the risk of injury was erroneous as a matter of law, and plaintiff prays for judgment in his favor, reversing the trial court.

I
We note initially that the statutory employer defense of SWICO is well taken. SWICO was the general contractor on the biotreatment facility construction project undertaken at the Shell plant in Geismar. In that capacity, SWICO subcontracted the pile driving work to Boh Brothers, the plaintiff's employer. We find that the work done by plaintiff was a part of SWICO's regular trade, business, or occupation as per La.R.S. 23:1061, and that plaintiff's exclusive remedy against SWICO is in workman's compensation, La.R.S. 23:1032; Wilson v. Werner Co., Inc., 393 So.2d 779, (La.App. 2nd Cir. 1981); Fultz v. McDowell, 344 So.2d 410 (La.App. 1st Cir. 1977). Thus, only Shell in the instant case could incur ex delicto liability.

II
We note additionally that Shell could not have committed actionable negligence under the facts alleged and admitted into evidence at the trial court. Under the construction contract between Shell and SWICO, SWICO was to furnish Shell with a completed facility, with Shell's only interest being in the result. The method of construction was left completely to SWICO. SWICO pulled the fence posts which left holes behind. SWICO failed to "dress up" the work area as it said it would. SWICO failed to fill or mark the holes or otherwise provide warnings. None of these acts or failures to act can be attributed to Shell, assuming they constitute actionable negligence. Since the hole which plaintiff fell into existed but a single day before the accident, Shell did not know and cannot be presumed to have known of the dangerous condition of its property created thereby. This lack of knowledge, either actual or constructive, negates the possibility of Shell's negligence.
However, lack of knowledge of an unreasonably dangerous condition does not preclude liability under Louisiana Civil Code Article 2317. According to the Supreme Court in Loescher v. Parr, 324 So.2d 441 (1975), liability under Article 2317 vests when the plaintiff shows that the thing which caused the damage was in the custody of the defendant, that the thing had a vice or defect, and the defect or vice occasioned the damage. This showing creates a presumption of legal fault against the defendant, and the defendant can exculpate himself only by showing that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistable force.[1]

III
The trial court pretermitted discussion of whether Article 2317 applied to Shell in the instant case because it found that the plaintiff had assumed the risk of injury. Thus, the plaintiff was barred from recovery even *338 if the hole in question constituted a vice or defect presenting an unreasonable risk or harm, since the trial court held that the plaintiff's actions amounted to victim fault. The plaintiff argues on appeal that he could not have been found to have assumed the risk, since his subjective knowledge of the specific risk involved was not proven.
We find the plaintiff's argument in this vein persuasive. Even though the evidence shows that the plaintiff knew that the fence had been removed, knew that the area around the fence had not yet been "dressed up," and knew for a virtual certainty that he was at the time of his injury walking through or near the fence row, he did not assume the risk of falling into a fence-post hole for one simple and basic reason: he was not proven to have been aware of the location of any hole. Both J. E. Devillier and Ricky Harrison corroborated plaintiff's testimony that no one on the work crew knew the location of the hole prior to the time plaintiff stepped into it. Since it was not proven that plaintiff subjectively knew the location of the hole, he cannot have known of the impending risk and cannot have appreciated and understood the danger of the risk involved. See Dorry v. LaFleur, 399 So.2d 559 (La.1981); Fonseca v. Marlin Marine Corporation, ___ So.2d ___, No. 80-C-1522, Supreme Court, March 2, 1981.

IV
Although we hold that Stewart did not assume the risk of injuring his back by stepping into a hole, a question which remains is whether contributory negligence can be equated with "victim fault" so as to bar recovery under Article 2317. Loescher, supra at 449. The Supreme Court in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 at 140 (1971), stated categorically that contributory negligence could not be urged as a defense to a strict liability action, inasmuch as contributory negligence presupposed negligence on the part of the tortfeasor and such negligence was not an ingredient of the defendant's fault under strict liability. However, it must be noted that Langlois was decided some four years prior to Loescher, and was based upon an interpretation of Civil Code Articles 2315 and 2316, rather than Article 2317. Langlois dealt with gas inhalation injuries sustained by a fireman responding to a call at the plant of the defendant. The fireman was stricken though he was but the driver of the fire truck. The court held that the ultrahazardous activity pursued by the defendant (i.e., storage of highly-poisonous gas) imposed strict liability upon defendant when such gas escaped and caused damage. The basis for this holding was a determination that "fault" for purposes of Article 2315 was broader than the term "negligence." It was in this context that the Court stated that contributory negligence could not be asserted as a strict liability defense, though assumption of the risk could so be asserted.
Thus, we agree with our brethren of the Third Circuit that after thorough consideration of Langlois, we do not regard it as holding that in every case of liability because of non-negligent fault on the part of the actor, contributory negligence is unavailable as a defense. See Parker v. Hanks, 345 So.2d 194 at 198, (La.App. 3rd Cir. 1977). See also Hebert v. United Services Automobile Association, 355 So.2d 575, (La. App. 3rd Cir. 1978).
In addition, in Langlois the Supreme Court held that the plaintiff had not assumed the risk, and further implied that his failure to use a breathing apparatus was not unreasonable, inasmuch as other men on the truck did not consider it necessary to use breathing devices. Thus, in Langlois the court showed that contributory negligence was not attributable to the plaintiff under the circumstances. For this reason, the statements made regarding contributory negligence as a strict liability defense were but dicta, since such statements were not essential to the outcome of the case. As dicta, the statement that contributory negligence can never be a defense to strict liability is not wholly binding upon this court. Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (La.1971).
*339 In our own circuit, we have in certain cases equated ordinary contributory negligence with "victim fault" as a defense to Article 2317 liability. See Sullivan v. Gulf States Utilities, 382 So.2d 184, (La.App. 1st Cir. 1980), writ denied 384 So.2d 447 (La. 1980); Korver v. City of Baton Rouge, 348 So.2d 708 (La.App. 1st Cir. 1977). Another decision in this circuit interpreting Article 2317 held that a victim will be prevented from recovering if his conduct was a cause in fact of the harm-producing incident. American Road Insurance Company v. Montgomery, 354 So.2d 656 (La.App. 1st Cir. 1977); writ denied 356 So.2d 430, 434, 435 (La.1978).[2]
Furthermore, Langlois has been critized in a recent plurality opinion of the Supreme Court. In Dorry v. LaFleur, 399 So.2d 559 (La. 1981), a plurality of the Supreme Court stated that the suggestion in Langlois that contributory negligence may never be a defense to strict liability was overbroad. In Dorry, the plaintiff was injured when he slipped in a puddle on the floor of a skating rink. The Supreme Court stated in its plurality opinion that a plaintiff's contributory negligence as an available defense to strict liability should be developed on a case-by-case basis. The court in Dorry refused to apply contributory negligence as a defense to the plaintiff's claim under Article 2322 on the ground that the "ruined" building housed a commercial enterprise to which plaintiff had paid the price of admission. Although we disdain a resort to common-law distinctions between "licensees" and "invitees," we find that the reasons for not applying contributory negligence as a defense to strict liability in Dorry are not present in the instant case. Nor were the activities of Shell in the instant case the type of ultrahazardous activities which in Langlois properly prevented the application of contributory, negligence. In short, we see no deeper, underlying policy reasons which would prevent our application of contributory negligence as a defense to strict liability in the case at bar, contra to the circumstances presented in Langlois and Dorry. Under all the facts of this case, we hold that contributory negligence may be availed of by Shell as an Article 2317 strict liability defense.

V
Clearly, the conduct of the plaintiff was a substantial cause of the harm-producing incident. Evidence in the record indicates that the plaintiff knew that he was walking through or near the fence row. Fence posts were scattered about the area, including one near the hole in which plaintiff fell. The route plaintiff chose to take was overgrown with weeds and bushes. Under these facts, we find that the plaintiff did not use due care either to discover a dangerous hole or to understand the hazards he might encounter. In other words, the plaintiff did not keep a proper lookout as he traversed the undergrowth. Even though the hole was obscured by knee-to-waist high weeds, evidence shows that the hole was some eighteen inches wide and three feet deep. Thus, even considering the high undergrowth, we find that a hole of this size was discoverable by the exercise of due care, and that the plaintiff was contributorily negligent in failing to notice and avoid the hole, Sullivan, supra and American Road Insurance Company, supra. Therefore, because the conduct of the plaintiff was a substantial cause of the harm-producing incident, we hold that the plaintiff was guilty of "victim fault" which bars his recovery under Civil Code Article 2317. Loescher, supra. at 449; American Road Insurance Company, supra.[3]
*340 VI
Since we find "victim fault" by the plaintiff in this case, we expressly pretermit discussion of whether all of the requisites of Article 2317 liability have been proven as against Shell,[4] particularly the troublesome question of whether a landowner who has relinquished control over a construction site to a general contractor, under a "turn-key" contract, can be considered to have still the custody or "garde" over the construction site. Assuming arguendo that all of the requisites of Article 2317 liability have been proven against Shell, we find that plaintiff's recovery is barred because of "victim fault."
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed, all costs to be assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Loescher, supra at 449.
[2] This court has stated that "victim fault" for Article 2317 purposes might even transcend the traditional negligence defenses of assumption of the risk and contributory negligence, see Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La.App. 1st Cir. 1981) writ denied 401 So.2d 988 (La.1981). See also Lastille, "Fault of the Victim: The Limits of Liability Under Civil Code Articles 2317, 2318, and 2321," 38 La.L.Rev. 995 (1978).
[3] We have considered also whether "third party fault" could be asserted as an Article 2317 defense by Shell, since SWICO employees created the hole and failed to correct the hazard. However; under the standards elucidated in Olsen v. Shell Oil Company, 365 So.2d 1285 at 1293, 1294 (La.1978); we find that SWICO was not a "third party" in the instant case.
[4] I.e., that the defendant has custody over the thing which occasions damage, that the thing has a vice or defect, and that the damage occurred through the defect or vice; Loescher v. Parr, 324 So.2d 441 at 449 (La. 1975).